J-S47010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.D., A MINOR | : IN THE SUPERIOR COURT OF<br>:     PENNSYLVANIA<br>:<br>: |
| APPEAL OF: S.D. & B.D., ADOPTIVE PARENTS | :<br>:<br>:<br>: |
| | : No. 488 MDA 2019 |

Appeal from the Order Entered February 28, 2019
In the Court of Common Pleas of Centre County Juvenile Division at
No(s): CP-14-DP-0000035-2018

BEFORE: DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:          **FILED OCTOBER 25, 2019**

Appellants, S.D ("Father") and B.D. ("Mother") (collectively, "Parents"), appeal the February 28, 2019 Order that adjudicated their adopted child, C.D. ("Child"), dependent and found Parents to be the perpetrators of child abuse against Child. Upon careful review, we affirm.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the relevant factual and procedural history of this case and we adopt its detailed recitation for purposes of this appeal. *See* Trial Ct. Op., filed 5/22/19, at 1-11. In sum, Child was born in October 2009 in Columbia and authorities removed him from the care of his biological parents when he was four years old for suspected physical and sexual abuse. Child spent time in an orphanage and a psychiatric facility until Parents adopted him, as well as his two biological siblings, when Child was seven years old. Centre County Children and Youth Services ("CYS") became involved with the family after receiving several reports that Parents

regularly used food restriction, aggressive physical restraint, and excessive physical exercise as discipline for Child, including making then-eight-year old Child circuit-train with weights for several hours a day right before bedtime. This resulted in Child's stealing food, acting out, running away from home, and losing over eight pounds in fourteen months, which caused professionals to diagnose Child with failure to thrive and unspecified anxiety. Professionals attempted to counsel Parents on numerous occasions about the adverse emotional and physical effects that their disciplinary techniques were having on Child; Parents were unreceptive to alternative suggestions.

On October 16, 2018, the trial court granted CYS' Application for Emergency Custody and placed Child in foster care. On February 25, 2019, after several hearings, the trial court adjudicated Child dependent, ordered Child to remain in foster care, and made a finding that Parents were the perpetrators of child abuse against Child based on serious mental injury and serious physical neglect.

Parents timely appealed. Parents and the trial court complied with Pa.R.A.P. 1925.

Parents raise the following issue for our review: "Whether the trial court abused its discretion by finding that [Child] was a dependent under [42 Pa.C.S. § 6301], the Juvenile Act, and a victim of child abuse under [23 Pa.C.S. § 6303], the Child Protective Services Law [('CPSL')]." Parents' Br. at 3.

We review findings in a dependency case for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). This Court is required to accept the findings of fact and credibility determinations of the trial court if the record supports them, but not required to accept the lower court's inferences or conclusions of law. *Id.* "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Interest of T.G*., 208 A.3d 487, 490 (Pa. Super. 2019) (citation omitted), *appeal denied*, 211 A.3d 750 (Pa. 2019). Notably, "we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

To adjudicate a child dependent, a trial court must determine by clear and convincing evidence that the child, *inter alia*, "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citing 42 Pa.C.S. § 6302). Further, "[a] determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S. § 6302. Clear and convincing evidence is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts

to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **A.B.**, 63 A.3d at 349 (citation and quotation omitted).

The overarching purpose of the Juvenile Act is "[t]o preserve the unity of the family whenever possible[.]" **Id.** (quoting 42 Pa.C.S. § 6301(b)(1)). Accordingly, "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." **In Interest of R.T.**, 592 A.2d 55, 57 (Pa. Super. 1991) (citation omitted). This Court has defined "proper parental care" as care which is "geared to the particularized needs of the child and [] at a minimum, is likely to prevent serious injury to the child." **A.B.**, 63 A.3d at 349 (citation omitted).

Likewise, the petitioning party must demonstrate the existence of child abuse by clear and convincing evidence. **L.Z.**, 111 A.3d at 1174. The CPSL defines "child abuse" to include, in relevant part, intentionally, knowingly or recklessly . . .

> (3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.
>
> * * *
>
> (7) Causing serious physical neglect of a child.

23 Pa.C.S. § 6303(b.1)(3) and (7). In turn, the CPSL defines "serious mental injury" to include:

> A psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that: (1) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that

- 4 -

> the child's life or safety is threatened; or (2) seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks.

23 Pa.C.S. § 6303(a). Additionally, the CPSL defines "serious physical neglect" to include, in relevant part, "[t]he failure to provide a child with adequate essentials of life, including food, shelter or medical care" that "endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning." **Id.** Finally, in the context of a finding of child abuse in a dependency proceeding, a person acts recklessly if "he consciously disregards a substantial and unjustifiable risk that the [serious mental injury or serious physical neglect] exists or will result from his conduct." **T.G.**, 208 A.3d at 491 (citing 18 Pa.C.S. § 302(b)).

Instantly, the trial court concluded that CYS presented clear and convincing evidence to adjudicate Child dependent based on lack of proper parental care and control where the evidence demonstrated: (1) Parents' use of food restrictions and excessive physical exercise as disciplinary methods were causing Child emotional and physical harm, including anxiety and food-obsessive behaviors that interfered with his education, and were preventing Child from growing and developing as a normal, healthy, child; and (2) Parents were advised by a number of professionals that their disciplinary techniques were unhealthy and harmful to Child, yet persisted with their methods and would not acknowledge the harm they were causing Child. Trial Ct. Op., filed 5/22/19, at 11-13.

Parents first aver that CYS failed to demonstrate that Parents' disciplinary techniques caused Child emotional harm where CYS failed to establish a link between Parents' food restrictions and Child's anxiety. Parents' Br. at 10. Parents specifically argue that Brian Rockower, M.D., a child psychiatrist at the partial hospitalization program that Child attends, who was qualified as an expert in the field of child psychiatry, was unable to "narrow the cause" of Child's anxiety and, instead, diagnosed Child with "unspecified anxiety." *Id.* at 10. Parents' arguments lack merit.

The trial court heard testimony from several witnesses who confirmed a link between Parents' disciplinary techniques and Child's anxiety, including Dr. Rockower. Parents mischaracterize Dr. Rockower's testimony when they aver that Dr. Rockower diagnosed Child with "unspecified anxiety" because he was unable to identify the source of Child's anxiety. On the contrary, Dr. Rockower testified that his diagnosis of "unspecified anxiety" indicated that he could not determine the specific type of anxiety that Child experienced: "at this point I am unable to narrow it down to any one diagnosis, that he meets a criteria for several things or not full criteria for any one diagnosis." N.T. Hearing 1/17/19, at 24. As to the source of Child's anxiety, Dr. Rockower clearly testified that the lack of nourishment in Parent's home led to Child's behavioral problems, and that Child worries about returning to Parents' home and Parents not allowing him to eat again. *Id.* at 27, 32.

The trial court also heard testimony from Rebecca Swentosky, director of Child's partial hospitalization program, who informed the court that Child

was "distraught and crying and saying how hungry he was that that he was always hungry." *Id.* at 77-79. Carrie Renninger, a licensed professional counselor who worked with Child, testified that Child did not want to live with his family because of food deprivation and physical exercise, and that both forms of punishment were affecting Child's ability to function in school. *Id.* at 103-105. Similarly, Mary Stamm, CYS caseworker, testified that Child was chronically anxious about if, and when, he was going to eat. *Id.* at 162-63.

Finally, Dr. Rockower, Ms. Swentosky, Rachel Schwab, M.D., pediatrician, and Holly Coleman, Family Crisis Intervention in-home social worker, all testified that Child's behaviors, anxiety, and affect improved markedly once CYS placed Child in foster care. *Id.* at 34, 36, 62-63, 92-93, 135-36.

> In light of this testimony, the trial court opined:

> [Parents'] technique of restricting [Childs]'s food as a way to control his behaviors creates insecurity and anxiety about whether the very people he looks to for love and protection will meet his most basic needs for survival. . . .Testimony from [Child]'s providers established that the food restrictions were causing [Child] anxiety and leading to food-obsessive behaviors that interfered with his education. Notably, these behaviors ceased shortly after [Child] was removed from Parents' home and was no longer subject to their disciplinary techniques.

Trial Ct. Op., filed 5/22/19, at 11-12. Our review of the record supports the trial court's findings and we find no abuse of discretion.

Parents next argue that the record does not support the trial court's finding that Parents' disciplinary techniques caused Child physical harm

because the trial court failed to consider evidence that, after meeting with the pediatrician and being diagnosed as failure to thrive, Child gained back some weight prior to CYS removing him from Parent's home. Parents' Br. at 12-13. This argument is, likewise, devoid of merit.

Our review of the record reveals that the trial court **did** consider evidence that Child gained weight while in the care of Parents. In fact, the trial court made a finding, which the record supports, that Child gained approximately 6 pounds but did not grow in height between July and October of 2018, while living with Parents. Trial Ct. Op. at 11. Despite this finding, when concluding that Parents' disciplinary techniques caused Child physical harm, the trial court placed more weight on the evidence that Child was diagnosed as failure to thrive, Parents' were uncooperative with professionals, and Child gained twelve pounds and grew an inch and a half during the first three months that he was living in foster care. *See id.* at 10-11. We decline to usurp the role of the trial court and reweigh the evidence. Accordingly, we find no abuse of discretion.

Finally, Parents assert that the trial court abused its discretion when it made a finding that Child was the victim of child abuse. Parents' Br. at 3. Parents essentially recycle the same arguments that we discussed above. Parents first contend that CYS failed to prove that Parents' disciplinary techniques caused serious mental injury to Child when CYS failed to demonstrate a link between Parents' disciplinary techniques and Child's anxiety. *Id.* at 16. Parents next argue that the record does not support the

trial court's finding that Parents' disciplinary techniques caused Child severe physical neglect because the trial court failed to consider evidence that, after meeting with the pediatrician and being diagnosed as failure to thrive, Child gained back some weight prior to CYS removing him from Parents' home. *Id.* at 18.

The trial court concluded that CYS presented clear and convincing evidence to make a finding that Parents were the perpetrators of child abuse against Child where the evidence demonstrated: (1) Parents substantially contributed to serious mental injury to Child by their disciplinary techniques which impacted Child's physical growth, interfered with his education, triggered severe anxiety, and caused Child to exhibit compulsive behaviors revolving around food and to express fear regarding whether his most basic needs would be met; (2) Parents did not seek out second opinions or present any evidence of consultations with professionals regarding the root of Child's behavioral problems or how to safely address them; (3) Parents' conduct resulted in serious physical neglect of Child when their disciplinary methods resulted in Child's failure to thrive; and (4) Parents demonstrated a conscious disregard of a substantial and unjustifiable risk of harm to Child when they persisted with disciplinary techniques despite recommendations from trained professionals that these techniques were harmful, Child's anxiety, and Child's failure to thrive. *Id.* at 13-15.

Our review of the record supports the trial court's findings. As discussed above, the trial court heard testimony from several witnesses who confirmed

a link between Parents' disciplinary techniques and Child's anxiety, including Dr. Rockower, Ms. Swentosky, Ms. Renninger, and Ms. Stamm. ***See*** N.T. Hearing, 1/17/19, at 27, 32, 77-79, 103-15, 162-63. Moreover, contrary to Parents' assertions, our review of the record reveals that the trial court **did** consider evidence that Child gained back some weight prior to CYS removing him from Parents' home. Accordingly, both arguments lack merit.

In sum, the record supports the trial court's adjudication of dependency and its finding of child abuse and, therefore, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2019